[Civ. No. 14957. Third Dist. Oct. 22, 1975.]

GEORGE P. SMITH et al., Plaintiffs and Appellants, v.
UNEMPLOYMENT INSURANCE APPEALS
BOARD et al., Defendants and Respondents.

COUNSEL

Loren E. McMaster, Michael D. Stump and Allen R. Link for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, N. Eugene Hill and Richard M. Skinner, Deputy Attorneys General, for Defendants and Respondents.

OPINION

FRIEDMAN, Acting P. J.,—In 1971 provisions were added to the Unemployment Insurance Code making state employees eligible for unemployment compensation under certain conditions. The Unemployment Insurance Appeals Board has ruled that persons working for the state Employment Development Department as part-time ("intermittent") employment and claims assistants (ECAs) could not qualify for unemployment insurance. The three petitioners, all of whom had been employed as ECAs, are claimants for unemployment compensation. They unsuccessfully challenged the appeals board ruling in the superior court and now appeal.

The state Civil Service Act provides for the appointment of several kinds of civil service employees on less than a full-time basis. A state agency may need persons to work on an intermittent or irregular time basis to accommodate variations in its workload. Eligible persons who are willing to accept employment as *intermittent employees* may be certified to such positions from civil service lists. (Gov. Code, §§ 19100-19101.)

Petitioner-claimants accepted intermittent employment as ECAs who would be available to work in local offices of the Employment Development Department (or, as it was formerly called, the Human Resources Department) during heavy workload periods. In general, they were employed to receive unemployment insurance claims, make initial determinations of eligibility and handle job referrals.

A typical statement of ECA employment conditions is contained in the record of petitioner Smith. In November 1970 Smith was appointed from a civil service list of persons who had attained eligibility and had signified willingness to accept employment as ECAs on an intermittent basis. The State Personnel Board announcement for the position

declared that ECAs would be paid by the hour and that candidates should have a "willingness and ability to work on a highly sporadic, intermittent basis; . . ." The announcement also stated that in view of the sporadic nature of the work, "This type of employment, therefore, is not suitable for persons otherwise regularly employed or attending school."

The Employment Development Department imposed a ceiling of 1,500 work hours per year upon intermittent employees. At times Smith worked a 40-hour week; some weeks he did not work at all; he filed a claim for unemployment insurance in January 1973; at that time and afterward he was working as an ECA from 7 to 40 hours per week. Petitioner Resnick had been working as an intermittent ECA since 1957; in September 1972 budget cuts forced reduction of her work hours; she did no work in January and March 1973, 6½ hours of work in February, and no more than 20 hours in April 1973, when she filed an unemployment insurance claim. Petitioner Conklin commenced work as an ECA in 1963; for 10 years she averaged about 100 hours' work per month; because of budget cuts her hours were reduced in July 1973 and she applied for unemployment insurance in August 1973.

Historically, the unemployment insurance system had not covered employees of the state and political subdivisions. (Unemp. Ins. Code, § 633.) The 1971 legislation, extending coverage to state employees generally, was accompanied by a clause declaring its urgency by reason of "a significant increase in layoffs in state service." (Stats. 1971, ch. 353, § 4.) The present appeal turns on sections 1451 and 1453 as added to the Unemployment Insurance Code by the 1971 legislation. Pertinent excerpts of these sections are appended in the margin.[1]

---

[1]Unemployment Insurance Code, section 1451: "Except as provided in this chapter, a state employee shall be eligible for unemployment compensation benefits on the same terms and conditions as are specified . . . for all other individuals . . . . A state employee shall have no rights, based on state wages, to disability benefits under this division."

Unemployment Insurance Code, section 1453: "As used in this chapter:

"(a)(1) 'State employee' means an individual who has permanent or probationary civil service status in employment by this state, and who (A) receives a notice of layoff with an effective date on or after March 1, 1971, pursuant to Article 2 (commencing with Section 19530) of Chapter 8 of Part 2 of Division 5 of Title 2 of the Government Code, or (B) terminates his employment, or has terminated his employment on or after March 1, 1971, after being notified in writing by his appointing authority that he is subject to layoff or mandatory transfer in his class and location, due to a reduction in staff arising from reductions in any budget act, or any other source of funds or due to a reduction in staff for reasons of economy or due to a reduction in staff resulting from organizational changes or reduced workload.

" . . . . . . . . . . . . . . . .

"(3) Nothing in this subdivision shall permit a state employee, as defined, to receive unemployment compensation benefits if he would be ineligible for or disqualified to

In terms of coverage or noncoverage of intermittent employees, these two statutes are less than limpid. The draftsman could have expressed the legislative decree in straightforward language. Unfortunately, he indulged in circumlocutions and ambiguities which generate the travail of statutory interpretation. Established principle bids the court to seek out and accomplish the legislative objective. As to the present problem, the Legislature has expressed its objective in two separate provisions, each tending toward an opposite result. A plague on such statutes—they abdicate the legislative function and thrust it upon the court, which is supposed to enforce the statute, not rewrite it.[2]

In denying eligibility to petitioner Smith, the appeals board issued a "precedent benefit decision," explaining its interpretation of the statutes. It concluded that intermittent employees were excluded from coverage by the limited definition of *state employee* in section 1453. (Fn. 1, *ante.*) We take the liberty of summarizing the appeals board's reasons: It noted particularly a qualification attached to section 1453—a state employee, as defined, must be one who received a notice of layoff pursuant to provisions of the state Civil Service Act, commencing with Government Code section 19530. The latter section provides for the layoff of state employees when necessitated by lack of work or funds or whenever advisable in the interest of economy. Other provisions of the Civil Service Act provide for the order of layoff, the protection of those with seniority and military credit, and for demotion in lieu of layoff. (Gov. Code, §§ 19532-19540.) An employee may appeal to the State Personnel Board within 30 days after receiving notice of layoff. (Gov. Code, § 19541.) Layoff (along with leave of absence and suspension) is a method of temporary separation from the state civil service. (Gov. Code, § 19500.)

In denying coverage, the appeals board pointed out that the layoff procedure is inappropriate to the situation of the intermittent employee. The latter knowingly accepts a position involving sporadic work on call from the employer; when, through lack of need or lack of budget, the work calls drop below past or accustomed weekly levels, no layoff in the sense of the Civil Service Act occurs, because the employee is never

---

receive such benefits under Article 1 (commencing with Section 1251) of Chapter 5 of Part 1 of Division 1."

[2]Murky statutory draftsmanship of this sort produces other woes. It causes headaches and controversy at the administrative level and needlessly adds to the burdens of the courts. It forces the parties and the successive tribunals into avoidable litigation costs and administrative expense. Statutes featuring more foreseeability and less legalese could avoid substantial waste of human and economic resources.

separated from the state civil service. Rather, he retains precisely the civil service position he originally accepted, remaining available for whatever sporadic work his employer's needs require. The present claimants had never received a notice of layoff. Indeed, while they were seeking partial unemployment compensation, they were continuing their intermittent work as ECAs, although on a diminished basis. Conceivably, an intermittent employee could be effectively laid off. Petitioner-claimants had never suffered a layoff pursuant to the Civil Service Act.

The appeals board decision observes that Unemployment Insurance Code section 1453 specifies two categories of state employee: (A) one who receives a notice of layoff, and (B) one who terminates his employment after receiving a written notice of layoff. These references mesh with another provision of the civil service law, Government Code section 19540, which provides for advance written notice of layoff for an employee paid on a monthly basis, thus furnishing the employee an election to accept his layoff earlier than the date specified by the employer. The (B) category of section 1453 is designed to cover the employee who elects accelerated layoff. The claimants, as intermittent employees, were compensated on an hourly, not monthly, basis. There would be no occasion for giving them a notice of layoff, since Government Code section 19540 applies only to those who are compensated on a monthly basis. Thus the intermittent employees would remain outside both categories of state employee as defined by section 1453.

Petitioners justifiably rely upon Unemployment Insurance Code section 1451 (fn. 1, *ante*). That statute makes state employees eligible on the same terms and conditions as the law specifies "for all other individuals," that is, for individuals in private employment. Many people have economic and personal needs which are adequately satisfied by part-time work; some, indeed, wish no more than part-time work. Persons so situated accept intermittent, hourly-rate jobs offered by private employers, content with work and income varying with their employers' needs.

During relatively full work weeks, intermittent private employees may earn enough to qualify for unemployment benefits. (See Unemp. Ins. Code, §§ 1275, 1281.) In a statutory sense a person is "unemployed" in any week of less than full-time work in which he earns less than his weekly benefit amount. (Unemp. Ins. Code, § 1252.) In actuality, such a person is partly unemployed, for he maintains an ongoing employment relationship with an employer and may even work for part of the week.

(See *Douglas Aircraft Co.* v. *California Unempl. Ins. Appeals Board,* 180 Cal.App.2d 636, 640-641 [4 Cal.Rptr. 723].) The law establishes a formula for partial unemployment compensation for weeks of partial unemployment. (Unemp. Ins. Code, § 1279.) Thus intermittent employees in private industry may seek and collect unemployment insurance without having been discharged or laid off. By establishing eligibility criteria for state employees identical with criteria for "all other individuals," section 1451 gives evidence of a design to compensate partially unemployed state employees equally with partially unemployed private employees.

There are other supports for the claimants' position. Had the Legislature intended to exclude intermittent employees from the general definition in section 1453, it could have so declared in simple terms instead of relying upon laborious deductions emanating from the layoff concept in the civil service statutes. Moreover, section 1453, subdivision (a)(3), reenforces the notion advanced in section 1451—that the criteria of eligibility and ineligibility are the same for state as for private workers; hence, that partly employed people of both kinds are equally eligible.

■ In this tug-of-war between opposing intendments within a single enactment, a comprehensive view of the enactment gives greater force to the position taken by the appeals board. Internal ambiguities and conflicts should be resolved to promote the objective exhibited by the entire plan. (*Black Panther Party* v. *Kehoe,* 42 Cal.App.3d 645, 651 [117 Cal.Rptr. 106].) The question is not whether intermittent employees may become wholly or partially unemployed in the sense of the unemployment insurance law. Rather, the case pivots on an inquiry whether unemployment insurance coverage for intermittent employees was an objective of the 1971 legislation.

As petitioners contend, section 1451 does indeed declare equal eligibility for state and private employees. That declaration, nevertheless, is limited to *state employee* as that term is defined by section 1453.

Had the Legislature intended to provide unemployment insurance coverage throughout the state civil service, there would be little or no point in the artificial definition of *state employee* framed by section 1453. The definition is hedged by references to notices of layoff. In a general, nonstatutory sense, a layoff is a cessation or temporary absence of

employment. (See *ACF Industries, Inc.* v. *Industrial Commission* (Mo.) 320 S.W.2d 484, 491; *In re Zeigler,* 1 Ohio App.2d 336 [30 Ohio Ops.2d 344, 204 N.E.2d 692, 693].) Here the statute limits its scope to those employees receiving notices of layoff *pursuant to* designated provisions of the Civil Service Act. *Pursuant to* is a restrictive term referring to action taken in conformity with or under the authority of the designated law. (See 35A Words and Phrases (1963 Perm. ed.) pp. 336-338.)

Layoff or notice of layoff *pursuant to* the Civil Service Act is a layoff accomplished under the authority and procedures fixed by that act. Layoff pursuant to the Civil Service Act is a technical, statutory concept. The abolition of a civil service position does not ordinarily cause the layoff of the person holding that position; rather, the layoff must be accomplished by the prescribed statutory procedures. (*Stockton* v. *Department of Employment,* 25 Cal.2d 264, 271 [153 P.2d 741].) Dismissal and layoff are separate statutory actions, each entailing separate grounds and separate procedures. (*Brown* v. *State Personnel Board,* 43 Cal.App.2d 70, 82-83 [110 P.2d 497].) Layoff causes a separation, however temporary, from the state civil service. (Gov. Code, § 19500.)

In including only employees notified of layoff pursuant to the Civil Service Act or those who quit after receiving written notice of layoff, Unemployment Insurance Code section 1453 incorporates the technical, civil service concept of layoff. It manifests a legislative design to exclude those employees whose loss of work, total or partial, results from conditions other than layoff.[3] When the work-hours of an intermittent employee *fall away to nothing or below an accustomed level, he is not laid off pursuant to* or in the technical sense connoted by the Civil Service Act; he is not separated from the state civil service. Section 1453 excludes intermittent employees from the definition of *state employee.* They are thus outside the scope of section 1451 as well as section 1453.

Petitioners argue against the above interpretation. They say it permits the employing agency to deny unemployment insurance eligibility by simply withholding notice of layoff. The question is not whether the employing agency has indulged in a device to bar petitioners' eligibility,

---

[3] Our statement is a generalization. Clause (B) of section 1453, subdivision (a)(1), refers to one kind of action other than layoff, i.e., mandatory transfer in class and location. The latter clause is not relevant to the claims of petitioners.

but whether petitioners are embraced by the legislation, properly construed. We have concluded that they are not.

Judgment affirmed.

Paras, J., and Evans, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 17, 1975.