Opinion
HASTINGS, J.
This case is an appeal by the California Unemployment Insurance Appeals Board from a judgment of the Superior Court of Los Angeles County, granting a petition for writ of mandate requiring appellant to set aside its decision denying unemployment benefits to respondent Addie Tomlin and requiring appellant to grant respondent benefits.
The facts are as follows: Until December 2, 1974, respondent was employed on a full-time basis by Lockheed Aircraft Corporation (Lockheed) as an electrical bench assembler, earning $5.81 per hour. On December 2, 1974, she was laid off from Lockheed because of company cutbacks due to lack of work. While working at Lockheed, respondent held a part-time job with J. C. Penney Company (Penney’s) working I2'A hours per week as a saleswoman, earning $2.81 per hour. She continued working part-time at Penney’s until January 18, 1975, at which time she quit that job for a variety of reasons. She had worked at Penney’s a total of 14 months.
On January 6, 1975, before quitting her job at Penney’s, respondent filed for unemployment insurance benefits based on her employment with Lockheed. She was told to return to the Employment Development Department office (EDD) on Januaiy 21, 1975, to receive her first benefit payment. When respondent returned on that date, she filled out the card that all applicants are required to complete when reporting to receive their unemployment insurance checks. In filling out the card, she indicated that she had received wages during the weeks ending Januaiy 11 and January 18, 1975, from part-time work at Penney’s, and that she had quit that same employment on January 18, 1975.
*645 Respondent was subsequently notified by the EDD that she was disqualified under section 1256 of the Unemployment Insurance Code[1] from receiving any benefits because she had left her most recent work, Penney’s, voluntarily and without good cause. Had she not been found to be in violation of section 1256, she would have been entitled to receive $90 per week less any wages actually received in excess of $18 per week.[2]
The EDD) determination denying benefits was affirmed by a referee on February 19, 1975, and by the California Unemployment Insurance Appeals Board (CUIAB) on April 24, 1975. Having exhausted her administrative remedies, the respondent petitioned the superior court for a writ of mandate, challenging the correctness of the administrative determination.
The lower court issued a writ of mandate ordering the appellant to grant respondent unemployment insurance benefits from January 6, 1975, at the reduced rate of $73 per week on the basis that: (1) respondent was part-totally employed from January 6, 1975, to January 18, 1975, and (2) “U.I.C. § 1256 when read in conjunction with U.I.C. § 1253 and § 1279 provides that Petitioner’s quitting of her part-time employment with Penney’s without good cause only has the effect of reducing the level of benefits, not eliminating said benefits, for the weeks following January 18, 1975.” Two issues were remanded: (1) whether in fact, quitting part-time employment to enroll in a retraining program is good cause for quitting pursuant to Unemployment Insurance Code sections 1266, 1267, and 1269, and therefore entitles respondent to receive full unemployment benefits beginning February 4, 1975 (the starting date of Lockheed’s retraining program for respondent) and (2) whether respondent rejected a *646 suitable full-time employment offered by J. C. Penney Company. Consideration of this second issue is optional.
The issue on appeal here is whether a part-time job which is not the applicant’s principal or primary employment constitutes “most recent work” within the context of Unemployment Insurance Code section 1256 where the quitting of such recent work voluntarily and without good cause would disqualify the claimant from any unemployment insurance benefits accruing to her by reason of being laid off from her principal and full-time employment.
The purpose of the Unemployment Insurance Code is to “insure a diligent worker against the vicissitudes of enforced unemployment not voluntarily created by the worker without good cause.” (Cal. Portland Cement Co. v. Cal. Unemp. Ins. Appeals Board (1960) 178 Cal.App.2d 263, 270 [3 Cal.Rptr. 37].) The intent of the overall federal unemployment compensation scheme was to tide the worker over periods of unemployment and to assist him in finding substantially equivalent employment by freeing the worker from doing all else besides looking for a job. The unemployment compensation system is intended to give prompt, if only partial, replacement of wages lost by unemployment until the worker can find other employment. (California Human Resources Dept. v. Java (1971) 402 U.S. 121, 130-132 [28 L.Ed.2d 666, 673-674, 91 S.Ct. 1347].) Section 100 of the Unemployment Insurance Code states the policy of this state to provide benefits “for persons unemployed through no fault of their own, and to reduce involuntary unemployment and the suffering caused thereby to a minimum.” The Unemployment Insurance Code was designed to provide a measure of social security to those who have become unemployed, as well as to alleviate disruptions to the economy caused by adverse business and industrial conditions, by stabilizing the purchasing power of the people of California. (Unemp. Ins. Code, § 100.)
Since the code is remedial in nature, it must be construed liberally so as to effectuate the stated objects of the statute. (Garcia v. California Emp. Stab. Com. (1945) 71 Cal.App.2d 107, 113 [161 P.2d 972].) (6 Ops.Cal.Atty.Gen. 200, 202 (1945).) “Internal ambiguities and conflicts should be resolved to promote the objective exhibited by the entire plan.” (Smith v. Unemployment Ins. Appeals Bd. (1975) 52 Cal.App.3d 405, 411 [125 Cal.Rptr. 35].)
The respondent in the present case was unemployed at the time that she was applying for benefits. The fact that she still held a part-time job with Penney’s does not negate the characterization.
*647 Section 1252, Unemployment Insurance Code, defines “unemployed”: “(a) An individual is ‘unemployed’ in any week in which he meets any of the following conditions: (1) Any week during which he performs no services and with respect to which no wages are payable to him. (2) Any week of less than full-time work if the wages payable to him with respect to that week are less than his weekly benefit amount.” The respondent falls within definition “(2)” while she was still employed by Penney’s because her 12½ hours a week did not constitute full-time work and her weekly wages of $35 were less than her weekly benefit of $90.[3] After quitting the Penney’s job, she fits within definition “(1)” since she no longer had any type of work or wages.
The California Administrative Code, title 22, section 1252-1, subdivisions (a) and (b), defines three different types of unemployment. Two of these are total unemployment and part-total unemployment:
“(a) A person who during a week performs no services and to whom no wages are payable is a totally unemployed individual.
“(b) A person who is employed less than a full work week if the wages payable to him with respect to such week are less than his weekly benefit amount and are earned from an employing unit other than the individual’s regular employing unit is a part-totally unemployed individual.” The lower court determined that respondent was “part-totally employed” while working at Penney’s during the period from January 6 to January 18, 1975, and became “totally unemployed” after quitting the job with Penney’s.
The wording of the statutory provisions, Unemployment Insurance Code sections 1252 and 1279, and of 22 Administrative Code, section 1525-1, quoted above, makes it obvious that the fact of part-time employment, in and of itself, does not disqualify an otherwise unemployed worker from receiving unemployment insurance benefits. The only effect that part-time work has on unemployment benefits is the *648 reduction of the weekly payment by an amount equal to wages received in excess of $18 (now $21) for that week. (§ 1279.) The fact that one can be “totally unemployed” and eligible for full benefits means that part-time work is not a prerequisite to receiving benefits. The code does, however, allow part-time work to be had without disqualifying the claimant from eligibility. If the claimant qualifies for full benefits in the absence of part-time work, and for at least partial benefits when the claimant has part-time work, then it makes no sense that should the optional part-time work cease, for any reason, the claimant would become disqualified from any and all benefits.
The EDD and the CUIAB interpret Unemployment Insurance Code section 1256 to disqualify the respondent from receiving any unemployment insurance benefits. The appellant contends that because respondent’s last employment of any kind was her part-time job at Penney’s and because she left that job voluntarily without good cause, therefore she has left her most recent work voluntarily without good cause within the meaning of section 1256. (See fn. 1, ante.)
Appellant urges that a literal interpretation of the statute be adopted. Its position is that the phrase “most recent work” should mean “last employment prior to filing for unemployment benefits.”[4] Appellant would look at the absolute last employment of any kind of the applicant even if that employment is of minor significance compared with the time spent and the wages earned at other employment of the applicant.
This literal interpretation of the statute works a hardship on the unemployed worker for whose benefit the unemployment compensation system was devised. The interpretation of appellant is unnecessarily harsh and is contrary to the purposes of employment compensation. Totally wiping out the unemployed worker’s benefits fails to further the policies of “insuring . . . against the vicissitudes of enforced unemployment,” (Cal. Portland Cement Co. v. Cal. Unemp. Ins. Appeals Board, supra, 178 Cal.App.2d 263), of tiding the worker over until he can find substantially equivalent employment, of freeing the unemployed worker from doing all else besides looking for a job, and of alleviating the suffering caused by involuntary unemployment. Whether the claimant here kept the Penney’s job or not made little difference to the fact that she was *649 unemployed in any kind of regular employment. She had not even a subsistence income in the absence of unemployment benefits.
We conclude that the phrase “most recent work” should not be construed to mean merely the last employment of any kind prior to filing for benefits. It must refer to significant or regular employment in order to effectuate the purposes of the act. The most reasonable meaning for the term “most recent work,” taken in the context of the entire Unemployment Insurance Code and the purposes and policies behind it, is the most recent primary or principal or full-time employment of the individual. The major factor in determining whether a particular job is the principal employment of the individual is the time spent in the employment vis-á-vis with the time spent in his other employments. Therefore, if an individual had a full-time job, on the basis of which he is now eligible for unemployment insurance benefits, his qualification for benefits is not totally eliminated because he voluntarily leaves a part-time job.
The remaining issue is whether respondent is entitled to her full unemployment benefits ($90 per week) as urged by the dissent, or to a reduced amount ($73 per week) as ordered by the trial court.[5] The reduced amount is the sum respondent would have received had she still been working for Penney’s. It was maintained at this figure because she quit without good cause.
We conclude that the trial court was correct. This finding supports the policy consideration expressed in section 1256; namely, that employees should be discouraged from quitting without good cause. The objectives of section 1256 are accomplished in that respondent suffers the loss of income from her part-time job and she does not have her employment level increased to $90 per week to compensate for the loss.
Earlier in this opinion we rejected CUIAB’s literal interpretation of the statute that would totally deprive respondent of any benefits for an interpretation that supports the purposes and policies behind the Unemployment Insurance Code. The author of the dissent agreed with our reasoning in this respect. The conclusion of the dissent, however, applies a literal interpretation to section 1279 that in effect defeats the purpose behind section 1256. It attempts to justify reinstating full compensation to respondent by arguing that reduction in benefits can only be made on “wages received.” When one has voluntarily and *650 completely removed himself from the labor market he of course will receive no wages. Therefore, in a situation such as we have here, the purpose behind section 1256 would be defeated under this interpretation. We do not believe the Legislature intended such a result. We are of the opinion that the legislative policy that denies compensation to an employee who quits his or her employment without cause stands out loud and clear and we should not literally interpret section 1279 to circumvent this policy when, as here, it can be effectuated in a logical manner.
The writ of mandate is affirmed.
Ashby, J., concurred.

Section 1256 reads as follows:
“An individual is disqualified for unemployment compensation benefits if the director finds that he left his most recent work voluntarily without good cause or that he has been discharged for misconduct connected with his most recent work.
“An individual is presumed to have been discharged for reasons other than misconduct in connection with his work and not to have voluntarily left his work without good cause unless his employer has given written notice to the contrary to the director within five days after the termination of service, setting forth facts sufficient to overcome the presumption. The presumption provided by this section is rebuttable.
“An individual whose employment is terminated under the compulsory retirement provisions of a collective bargaining agreement to which the employer is a party, shall not be deemed to have left his work without good cause.”

Section 1279 of the Unemployment Insurance Code reads in part as follows: “Each individual eligible under this chapter who is unemployed in any week shall be paid with respect to that week an unemployment compensation benefit in an amount equal to his weekly benefit amount less the amount of wages in excess of eighteen dollars ($18) [now $21] payable to him for services rendered during that week. . . .”

Section 1280, Unemployment Insurance Code, reads in part as follows:
“An individual’s weekly benefit amount is the amount appearing in column B in the following table opposite that wage bracket in column A which contains the amount of wages paid to the individual for employment by employers during the quarter of his base period in which his wages were the highest.
“A
“B
“Amount of wages in highest quarter
“Weekly benefit amount
“2,748.00—2,787.99”
“ 90”

Appellant does not deal with the fact that respondent actually filed her initial claim before terminating her work at Penney’s, and only quit that job after two more weeks had passed, just prior to filing a claim to receive the benefits accruing to her for those first two weeks.

Respondent agreed with the trial court’s reasoning and did not cross-appeal for the larger amount.