Nora HOPKINS *v.* Dewey STILES, Director of Labor,
and SEARS PORTRAIT STUDIO

E 83-87                                    662 S.W.2d 177

Court of Appeals of Arkansas
Division II
Opinion delivered November 30, 1983
[Rehearing denied January 18, 1984.]

*Wilson, Grider & Castleman* and *Ponder & Jarboe,* by: *Murrey L. Grider,* for appellant.

*Thelma Lorenzo,* for appellees.

DONALD L. CORBIN, Judge. This appeal is from a decision of the Board of Review which held appellant ineligible to receive unemployment compensation benefits. The Board's decision was based on the finding that appellant left her last work voluntarily and without good cause connected with the work. [Section 5 (a) of the Arkansas Employment Security Law, Ark. Stat. Ann. § 81-1106 (a) (Supp. 1983)]. The Board of Review affirmed and adopted the Appeal Tribunal's decision which contained the following findings of fact and conclusions of law:

> The claimant quit her part-time job with this employer because she was not getting enough hours to pay for her driving to and from work. She indicated when she was first hired she was told her hours might fluctuate and she might have to work some evening hours. In fact, this happened and the claimant was requested to work one four hour shift in the day-time and two evening shifts consisting of two hours each. She indicates she lives approximately 10 miles one-way from her job and this would not be economically feasible to drive this distance. She does admit she was told though her hours

would fluctuate and she would have to work some evenings. She also indicated that she was hired on a part-time basis and knew this could possibly happen.

This appeal raises two issues. The first is whether there is substantial evidence to support the Board's finding that appellant voluntarily left her part-time work without good cause connected with the work. And secondly, whether an individual who is receiving unemployment compensation benefits may be totally disqualified from receiving benefits attributable to their prior full-time employment because they voluntarily quit their subsequent part-time employment. The first issue raised, dealing with good cause to leave employment, has been dealt with many times by this Court. However, the second issue raised by this appeal is one of first impression in this state.

As to whether appellant had good cause to leave her employment, the testimony and record support the finding that appellant was aware at the time she was hired that "her hours would fluctuate and she would have to work some evenings." This Court has stated in *Broyles* v. *Daniels*, 269 Ark. 712, 600 S.W.2d 426 (Ark. App. 1980): "We agree with the board of review's conclusion that general economic conditions which lead to seeking higher wages or lower living costs do not constitute 'good cause connected with the work,' as contemplated in the statute." And in *Armstrong* v. *Daniels*, 270 Ark. 303, 603 S.W.2d 481 (Ark. App. 1980) this Court held: "While we will consider allegations of substantial decrease in wages as good cause for voluntary departure from employment, we will not say that complaints based primarily upon economic conditions beyond the control of the employer fit the statutory exemption for disqualification." Based upon the evidence and testimony, we cannot say the Board's decision that appellant voluntarily left her part-time work without good cause is not supported by substantial evidence or that it is contrary to law. See, *Harris* v. *Daniels*, 263 Ark. 897, 567 S.W.2d 954 (1978).

We now turn to the second issue raised by this appeal. The record reveals that appellant's eligibility to receive unemployment benefits was not affected by her acceptance

of part-time work and that the amount of her benefit check was only slightly reduced on two occasions because of her part-time wages. The statutory provision governing the amount of weekly benefits awarded during partial employment is Section 3 (c) of the Arkansas Employment Security Law [Ark. Stat. Ann. § 81-1104 (c) (Supp. 1983)] which provides in part:

> For all claims filed on and after July 1, 1971, any insured worker who is unemployed in any week as defined in subsection 2 (m) [§ 81-1103 (m)] and who meets the eligibility requirements of Section 4 [§ 81-1105] shall be paid, with respect to such week, an amount equal to his weekly benefit amount less that part of the remuneration (if any) payable to him with respect to such week which is in excess of forty percent (40%) of his weekly benefit amount.

The California Court of Appeal was presented with a similar issue in *Tomlin* v. *California Unemployment Ins. Appeals*, 82 Cal. App. 3d 642, 147 Cal. Rptr. 403 (1978). The California court held that voluntary quitting of part-time work without good cause did not disqualify appellant from receiving benefits accruing to her by reason of prior full-time employment. The California court reached its decision by interpreting the meaning of the phrase "most recent work" used in the statute precluding recovery of unemployment compensation benefits if employee left "most recent work" voluntarily without good cause. The court's opinion in *Tomlin, supra,* states:

> We conclude that the phrase "most recent work" should not be construed to mean merely the last employment of any kind prior to filing for benefits. It must refer to significant or regular employment in order to effectuate the purposes of the act. The most reasonable meaning for the term "most recent work," taken in the context of the entire Unemployment Insurance Code and the purposes and policies behind it, is the most recent primary or principal or full-time employment of the individual. . . . Therefore, if an individual had a full time job, on the basis of which he

is now eligible for unemployment insurance benefits, his qualification for benefits is not totally eliminated because he voluntarily leaves a part-time job.

The Supreme Court of Nebraska in *Gilbert* v. *Hanlon,* 214 Neb. 676, 335 N.W.2d 548 (1983), cited the following language found in the *Tomlin, supra,* case:

> If the claimant qualifies for full benefits in the absence of part time work, and for at least partial benefits when the claimant has part time work, then it makes no sense that should the optional part time work cease, for any reason, the claimant would become disqualified from any and all benefits.

The Nebraska Court went on to say, "We do not believe that the act requires an all or nothing interpretation as urged by the commissioner."

And, likewise, in *Unemployment Comp. Board of Review* v. *Fabric,* 24 Pa.C. 238, 354 A.2d 905 (1976), the Commonwealth Court of Pennsylvania held that when a claimant voluntarily leaves part-time employment, he is rendered ineligible for further benefits only to the extent that his benefits were decreased by virtue of his part-time earnings. The Pennsylvania court reached its holding through an interpretation of the statute which disqualifies a claimant whose "unemployment" is due to voluntarily leaving work without cause of necessitious and compelling nature and the statutory definition of "unemployment". The court concluded that:

> [T]he part-time job must have . . . decreased the amount of the weekly benefits payable before a claimant can be denied any benefits because of a voluntary separation. Under the statutory definition, a claimant is only "unemployed" due to his voluntary separation to the extent of the wages he was earning; and we see no provision in the Act which requires or authorizes the Board to deny *all* of claimant's benefits.

The District Court of Appeal of Florida relied upon the Pennsylvania Court's decision in *Fabric, supra,* to reach its

decision in *Neese* v. *Sizzler Family Steak House,* 404 So.2d 371 (Fla. 1981). The court in *Neese* enunciated three reasons for its liberal interpretation of the governing statute:

(1) The statute should not be interpreted in such a manner that it discourages part-time employment since part-time wages help to provide for claimants and their families during a time of unemployment and because part-time wages, in some instances, reduce the amount of benefits a claimant is entitled to and therefore reduces the compensation fund's liability.

(2) The legislature clearly stated that the purpose of the act is to lighten the economic burden on unemployed worker and his family. The elimination of benefits solely because a claimant voluntarily accepts a part-time job which he later quits does not further this purpose.

(3) To deny all benefits to claimants who would otherwise be eligible to receive them except for the fact that they voluntarily left a part-time job would result in an unwarranted benefit to a claimant's former full-time employer in the form of reduced contribution rate.

We are in agreement with the rule expressed in the above-cited cases. Therefore, we hold that a claimant who voluntarily leaves part-time employment is ineligible for further unemployment benefits only to the extent that his benefits would have been decreased by his part-time wages.

Turning to the case at bar, appellant testified that she quit her work when her hours were changed to three hours on Monday and two hours on two evenings a week for a total of seven hours a week. Appellant also stated that she could work up to eleven hours a week without having her part-time wages cause a reduction in her unemployment benefits. She did, however, testify that her benefits were reduced during two weeks of her five weeks of part-time employment. The employer-representative testified as follows at the hearing:

The first four [weeks] that she worked were considered training, and they always . . . allow you more hours for

training periods than what the person would normally work during the rest of the time.

It, therefore, appears from the record that had appellant continued her part-time employment, she would have worked an average of seven hours a week at minimum wage ($2.95 per hour as of March, 1983) which would have earned her a total of $20.65 per week. The record contains a copy of appellant's monetary benefit determination showing that appellant was entitled to receive $95.00 per week in extended benefits. It follows that appellant could earn up to $38.00 ($95.00 x 40%) without causing a reduction in her benefit amount. Since appellant could have expected to earn only $20.65 a week, her part-time wages would have had no effect on her unemployment benefits.

We therefore reverse and remand this case for the entering of an order awarding appellant benefits in accordance with this opinion.

Affirmed in part, reversed and remanded in part.

CLONINGER and CRACRAFT, JJ., agree.