**John P. WELCH, Petitioner–Appellee,**

v.

**The IOWA DEPARTMENT OF EMPLOYMENT SERVICES, JOB SERVICE DIVISION, n/k/a Employment Appeal Board, A Division of the Department of Inspections and Appeals, Respondent–Appellant,**

**City of Minburn, Employer.**

No. 87–136.

Court of Appeals of Iowa.

Jan. 27, 1988.

Blair H. Dewey and William C. Whitten, Des Moines, for respondent-appellant.

David L. Wornson, Legal Services Corp. of Iowa, Decorah, for petitioner-appellee.

Considered by DONIELSON, P.J., and SCHLEGEL and HAYDEN, JJ.

DONIELSON, Presiding Judge.

Respondent appeals from a district court decision which awarded the petitioner unemployment compensation benefits, ruling that a separation from a regular, but part-time job, in a second benefit year was not a disqualifiable event. We affirm.

The petitioner, John P. Welch, was separated from his employment with Oscar Mayer on May 9, 1983. He received other separation benefits (severance pay) and consequently did not become eligible for unemployment insurance benefits until January 1984. Welch secured part-time employment with the City of Minburn on May 15, 1984, and thus he continued to receive partial unemployment benefits based upon his wage credits at Oscar Mayer. Welch voluntarily quit his part-time work on January 11, 1985, to seek full-time employment in Arizona.

While in Arizona, Welch filed an interstate claim for unemployment compensation. A claims deputy in Iowa denied the claim on the basis that Welch left his part-time employment without good cause. The hearing officer and appeal board affirmed that decision. The district court remanded for additional fact-finding to determine whether Welch's act was a disqualifiable

separation. The hearing officer found that because Welch voluntarily left his part-time employment he was disqualified from benefits. The appeal board affirmed. The district court reversed, finding that the agency's interpretation of the statute was inconsistent with the purpose and principles of Iowa Code chapter 96. Respondent appeals.

Under the Iowa Administrative Procedure Act, the district court functions in an appellate capacity to correct errors of law on the part of the agency. *Barnes v. Iowa Dep't of Transp.*, 385 N.W.2d 260, 263 (Iowa 1986). Our review of a decision of a district court rendered pursuant to the Iowa Administrative Procedure Act, Iowa Code section 17A.19, is limited to the sole question of whether the district court correctly applied the law. *Jackson County Public Hosp. v. Public Employment Relations Bd.*, 280 N.W.2d 426, 429 (Iowa 1979). We must therefore apply the standards of section 17A.19(8) to the agency action to determine whether our conclusions are the same as those of the district court. *Lefebure Corp. v. Iowa Dep't of Job Service*, 341 N.W.2d 768, 770 (Iowa 1983).

**I.** The respondent Employment Appeal Board claims that voluntary separation from regular, part-time employment without good cause during a second benefit year is a disqualifiable event under Iowa employment security law. The Board states that the work secured by Welch with the City of Minburn became regular and suitable based upon the length of his unemployment. This is because Welch was unemployed for one year and was required to secure a job in order to maintain his partial unemployment benefits in the second benefit year. Welch asserts that the agency did not raise this argument in any proceedings below and so cannot raise it now on appeal.

■ A party cannot raise for the first time on appeal issues of fact or law which have not been raised below. *Chicago & N.W. Transportation Co. v. Iowa Trans.*, 322 N.W.2d 273, 276 (Iowa 1982). This principle of law extends to judicial review of administrative decisions where issues have not been raised during the contested case proceeding. *Armstrong v. State of Iowa Bldgs.*, 382 N.W.2d 161, 165 (Iowa 1986). The federal courts recite that the validity of agency decisions must rest upon the reasoning as given by the agency and not based upon counsel's post hoc rationalization. *E.g., Motor Vehicle Manufacturers v. State Farm Mutual*, 463 U.S. 29, 50, 103 S.Ct. 2856, 2870, 77 L.Ed.2d 443, 462 (1983).

We agree with Welch that the Board's characterization of Welch's work with the City of Minburn as "suitable," as that word is contained in Iowa Code section 96.5(3) (1985), is an issue which should have been addressed below. A review of the record discloses this argument was not previously raised.

■ **II.** While Welch worked for City of Minburn, his wages reduced his benefits according to a statutory formula contained in Iowa Code section 96.3(3), called a wage-earnings limitation. *See* I.A.C. 370—4.18 (1986). In other words, a claimant who is unemployed as a result of a separation from his regular, full-time employment and who continues to meet the other eligibility requirements of availability and actively and earnestly seeks work pursuant to Iowa Code section 96.4(3) may work part-time and still receive benefits as a result of his separation from his full-time employment. However, the weekly earnings must not exceed the weekly benefit amount plus $15. Welch met the requirements of section 96.-4(3) to actively search for work and be available. He was not required to accept part-time work or supplement his benefits. Thus, the issue before us is one of first impression: whether a claimant's voluntary quit from part-time employment during a second benefit year of receiving partial unemployment benefits is a disqualifiable event resulting in a total benefit disqualification.

Iowa Code section 96.5(1) (1985) disqualifies an individual for benefits "[i]f the individual has left work voluntarily without good cause attributable to the individual's employer, if so found by the department." The respondent claims the district court erred by failing to properly construe the

statutory scheme, which it contends is to prohibit voluntary separation from regular, part-time work when a claimant has been unemployed for an extended period of time. The respondent states that Iowa Code section 96.5(1) applies to disqualify a claimant from benefits if he voluntarily leaves full-time or part-time employment.

The Iowa Supreme Court in *McCarthy v. IESC*, 247 Iowa 760, 762, 76 N.W.2d 201, 202 (1956), stated that Iowa Code section 96.5(1), and specifically the word "work" in the clause "if he left his work," was not "plain and unambiguous" when applied to entitlement issues involving part-time or full-time work. The court ruled "... whether the process be called 'interpretation' of the language, or merely 'application' of it to unforeseen facts, we must, if reasonably possible, avoid a result clearly contrary to the avowed purpose of the entire Chapter." *Id.*

The issue presented demands determination of the legislative intent and statutory construction of the language of Chapter 96. Chapter 96 is to be construed liberally to achieve the objective of minimizing the burden of involuntary unemployment. *Maschino v. George A. Hormel & Co.*, 372 N.W.2d 256, 261 (Iowa 1985). In interpreting a statute, the court must look to the object to be accomplished and evils sought to be remedied or the purpose to be subserved. *Shidler v. All American Life and Financial Corp.*, 298 N.W.2d 318, 321 (Iowa 1980). Courts must place a reasonable construction on the statute which will best effect its purpose rather than defeat its purpose. *Peffers v. City of Des Moines*, 299 N.W.2d 675, 678 (Iowa 1980).

We are in agreement with the district court's construction of the statutory language to find Welch entitled to continue receiving partial benefits even though he voluntarily quit his part-time employment with the City of Minburn. The district court based its decision on the *McCarthy* case, which recognized that the legislature did not intend the term "work" in section 96.5(1) to be applied to all employment situations and especially those not the cause of the claimant's unemployment. *McCarthy*

involved a claimant who quit, without good cause, a part-time job held concurrent with his regular, full-time employment. He was then laid off and disqualified from receiving benefits under the rationale that section 96.5(1) does not distinguish between part-time and regular work and hence total benefit disqualification resulted from any part-time separation without cause. The court in *McCarthy*, 247 Iowa at 765, 76 N.W.2d at 204, held that part-time separation had no effect on the claimant's entitlement to benefits because the part-time separation did not cause the claimant's initial unemployment and that a windfall would come to the regular employer who did cause claimant's unemployment because of that employer's being relieved of liability. We find the district court's decision in the case at hand is consistent with the rationale given in *McCarthy*.

A recent Minnesota case addressed this particular issue with substantially the same fact pattern. In *Holman v. Olsten Corp., Olsten Health Care Service*, 389 N.W.2d 236, 241 (Minn.1986), the Minnesota Supreme Court held that a quit without good cause from part-time employment obtained to supplement benefits and therefore entitling claimant to partial unemployment benefits based on a previous regular employment separation was not disqualifiable. The "all or nothing proposition" is not justified by the cases or statutes. *Id.*

There are certain policy considerations to which we look for our guidance in resolving this issue. The unemployment statutory schemes provide a statutory benefit formula which provides a monetary incentive for unemployed workers to supplement their benefits; to totally disqualify benefits from those in Welch's situation would appear to be inconsistent and act as a punishment for seeking supplemental part-time work. We think that a total separation disqualification applies to one's "primary" or "regular" employment which was the original cause of the claimant's unemployment. Furthermore, for the employer who did cause claimant's unemployment to be relieved of paying unemployment compensation, as in the case at hand, would give that employer an undue benefit. We think

this case should be treated in the same light as prior cases holding that separation disqualification should not apply to a *concurrent* part-time separation because the part-time work did not create claimant's unemployed status. *McCarthy,* 247 Iowa at 765, 76 N.W.2d at 203. It appears to us that the legislative scheme is to provide an incentive to unemployed workers to supplement their benefits with part-time work while at the same time allowing them to remain available for employment consistent with their regular employment by being able to actively and earnestly seek work pursuant to Iowa Code section 96.4(3).

■ The Board argues that because Welch's part-time separation occurred in a second benefit year, this necessitates a different statutory construction. The statutes allow unemployed workers to receive benefits as long as the individuals meet a minimum requirement of earning $250 in insured work subsequent to a first benefit year claim. Iowa Code § 96.4(4). This requirement would seem to encourage unemployed workers to find some sort of employment, rather than to relieve the liability of the employer who caused the unemployment. Welch's part-time work was obtained in his first benefit year to supplement his benefits; when he reached the end of this first benefit year, he could requalify for a second benefit year by continuing with part-time employment. At the end of Welch's first benefit year, he was entitled to draw upon wage credits earned from Oscar Mayer Foods; the same disqualification provisions of Iowa Code section 96.5 and eligibility provisions of Iowa Code section 96.4 applied. The Code does not make a distinction between a first benefit year entitlement and a second benefit year entitlement, and we also decline to do so.

Welch was employed by Oscar Mayer for twenty-one years. He met the statutory and agency requirements to entitle him to draw on wage credits in a second benefit year. We do not think there should be total disqualification of benefits due to his voluntary quit from his part-time employment with the City of Minburn in his sec-

ond benefit year. His unemployed status was created by his separation from Oscar Mayer Foods and continued throughout the period of his claim. When he commenced part-time work and supplemented his benefits, he was still unemployed but only partially unemployed as defined in Iowa Code section 96.19(9). *See also* § 96.3(2) and (3). His separation from part-time work changed his status from partially unemployed to totally unemployed, not from employed to unemployed. His partial unemployment benefits reduce the charges to Oscar Mayer's account, but it does not remove the fact his initial cause of unemployment was due to separation from Oscar Mayer.

We cannot think it was the legislature's intent to encourage benefit supplementation but to do so, a claimant would risk losing full benefits to which he is entitled; this rationale would only serve to penalize those workers who in good faith attempt to lessen the economic burden of unemployment. The legislature by providing a reduction formula in section 96.3(3) if part-time work is accepted is giving a recipient an incentive and encouragement to seek part-time work. If a recipient works part-time, his unemployment benefits are reduced but the recipient is left with more income than if he did not work. Recipients would be hesitant to accept part-time work if they had to fear risking total benefits in case they left their part-time work. The ultimate result if we were to adopt the agency's statutory rationale would be that one class of non-working, unemployed recipients would continue to collect full benefits while part-time working recipients of benefits who quit would be totally disqualified. The effect of this rationale is "to reward the idle and punish the ambitious." *Emerson v. Dir. of Div. of Empl. Sec.,* 393 Mass. 351, 471 N.E.2d 97, 99 (1984). Similarly, in *Tomlin v. Cal. Un. Ins. Appeals,* 82 Cal.App.3d 642, 147 Cal.Rptr. 403, 407 (1978), the court held under similar circumstances that it made no sense to penalize the claimant by disqualifying him from any and all benefits for quitting optional part-time work for whatever reason. The *Tomlin* court held that an individual is disqual-

ified for unemployment compensation benefits if the Director finds that he or she left his or her most recent work voluntarily without good cause, with the term "most recent work" referring to primary, principal, or full-time employment. *Id.* 147 Cal. Rptr. at 408. Disqualifying such claimants from total benefits nullifies any incentive for them to work part-time. In construing legislative enactments, courts should avoid strained, impractical, or absurd results, *Welp v. Iowa Dept. of Review*, 333 N.W.2d 481, 483 (Iowa 1983). To interpret the statutory language of section 96.5(1) as the agency would desire would result in an impractical result which would be unfortunate if carried out.

■ The district court found that "the agency decisions which created a benefit overpayment and continuing a denial of benefits to the Petitioner should be reversed." The overpayment represented the amount of partial benefits Welch received as a result of his part-time work with City of Minburn offsetting the charge to Oscar Mayer's account. We find it would be consistent with the statutory scheme to award benefits at the level Welch would have received absent his separation from part-time work, this amount to continue and be in order for requalification upon the commencement of claimant's subsequent benefit year, pursuant to statutory and agency guidelines.

■ Iowa Code section 96.7(3)(a)(2) refers to the principle that no employer should have its account charged for benefits paid unless the employer has in some sense been responsible for the claimant's unemployment (i.e., a quit with good cause attributable to the employer or for discharges not based on misconduct). Agency rules 370-4.26(15) and 4.27(1), state that when a claimant quits supplemental or concurrent employment without cause and is subsequently separated with cause from full-time employment, there will be no entitlement disqualification. However, the wage credits earned from the supplemental employment cannot be credited to the claimant's base period wage credits until he has "requalified" as provided in Iowa Code

section 96.5(1)(g). In other words, the supplemental employer being "innocent" does not have his account charged and the employee is not allowed to utilize wages earned from employment that was quit without good cause at least until he has requalified those credits by earning ten times his weekly benefit amount. We find that these same charging principles and rules could be applied to this case. Welch could not utilize wage credits earned from the City of Minburn unless and until he worked and was paid ten times his weekly benefit amount subsequent to the quit, and the City of Minburn's account would not be charged or affected.

We affirm the district court.

AFFIRMED.