[No. D026737. Fourth Dist., Div. One. Dec. 8, 1997.]

METRIC MAN, INC., Plaintiff and Appellant, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD et al., Defendants
and Respondents.

COUNSEL

Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone, Carol P. Schaner and Steven H. Gentry for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Charlton D. Holland III, Assistant Attorney General, John H. Sanders and Susan A. Nelson, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**PRAGER, J.\***—Plaintiff Metric Man, Inc. (Metric Man), appeals a judgment denying its petition for a writ of mandate (Code Civ. Proc., § 1094.5) to compel defendant California Unemployment Insurance Appeals Board (UIAB) to set aside its decision to grant Donald Folk (Folk) unemployment insurance benefits. Folk worked as a traveling salesman for Metric Man.

Metric Man contends the judgment of the superior court is not supported by the weight of the evidence because Folk failed to meet three of the seven requirements for employee status set forth in Unemployment Insurance Code[1] section 621. Specifically, Metric Man contends there was insufficient evidence to support the court's findings that: (1) Folk was required to work for Metric Man on a full-time basis; (2) Folk was required to perform services personally; and (3) Folk's sales were made predominately to wholesalers and retailers. Metric Man further contends the court failed to exercise its independent judgment over the administrative record. We affirm.

---

\*Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] All further statutory references are to the Unemployment Insurance Code unless otherwise specified.

## Factual and Procedural Background

Metric Man is a distributor of nuts, bolts, fasteners, and a variety of other automotive products including specialty engine parts, lights, and chemicals. In May 1994, Metric Man hired Folk as a sales representative through a newspaper advertisement. Metric Man required Folk to sign a written contract which provided he was not an agent or legal representative of Metric Man. About four months later, Metric Man terminated the contract because Folk's sales failed to meet the company's expectations for the territory Folk was assigned.

After he was terminated, Folk filed a claim for unemployment insurance benefits with the Employment Development Department (EDD). Metric Man contested the claim. After interviewing Folk, and Kevin Lolli, Metric Man's president, the EDD decided Folk was an employee under section 621 and that Metric Man's reserve account was subject to charges for unemployment benefits paid to Folk.

Metric Man appealed the EDD's decision and an evidentiary hearing was held before an administrative law judge. The administrative law judge reversed the EDD's decision, finding Folk was ineligible for unemployment benefits because under the common law criteria for determining employee status, he was an independent contractor rather than an employee of Metric Man.

Folk appealed the administrative law judge's ruling to the UIAB. Reversing the administrative law judge, the UIAB concluded that "under . . . section 621, [Folk] was a traveling salesperson covered by the Unemployment Insurance Code as an employee, even though under common law principles he was an independent contractor."

Metric Man filed a petition for writ of mandate in superior court seeking review of the UIAB's decision. The court denied the petition and this appeal followed.

## Discussion

### I. *Standard of Review*

While the superior court exercises its independent judgment over the administrative record, our inquiry is limited to whether the superior court's findings are supported by substantial evidence. (*Lacy* v. *California Unemployment Ins. Appeals Bd.* (1971) 17 Cal.App.3d 1128, 1134 [95 Cal.Rptr.

566].) We resolve all conflicts in evidence in favor of the superior court's findings and draw all legitimate and reasonable inferences to uphold those findings. (*Ibid.*) Further, ". . . we review the trial court's ruling, not the reasons given for it. If the ruling is correct, it will be affirmed even if it was reached by a mistaken line of reasoning. [Citation.]" (*Oakdale Village Group v. Fong* (1996) 43 Cal.App.4th 539, 547 [50 Cal.Rptr.2d 810].)

## II. *Section 621*

Section 621 defines the term "employee" for purposes of determining whether a claimant is entitled to unemployment compensation under the code.[2]

Based on the express language of section 621, the EDD and UIAB properly used the following seven-part test to determine whether Folk was an employee under the statute. Under that test, a salesperson qualifies as an employee only if:

1. The salesperson performs services on a full-time basis for the principal except for sideline sales activities performed on behalf of some other person;

2. The services consist of soliciting orders on behalf of and transmitting such orders to the principal;

3. The customers solicited are wholesalers, retailers, contractors, or operators of hotels, restaurants, or other similar establishments;

4. The orders solicited from such customers are for merchandise for resale or for supplies for use in the business operations of the customers;

5. The contract under which the salesperson performs contemplates that substantially all of the services are to be performed by him or her personally;

---

[2] In relevant part, section 621 provides: " 'Employee' means all of the following: [¶] . . . [¶] (c)(1) Any individual, other than an individual who is an employee under subdivision (a) or (b), who performs services for remuneration for any employing unit if the contract of service contemplates that substantially all of such services are to be performed personally by such individual either: [¶] . . . [¶] (B) As a traveling or city salesperson, other than as an agent-driver or commission-driver, engaged upon a full-time basis in the solicitation on behalf of, and the transmission to, his or her principal (except for sideline sales activities on behalf of some other person) of orders from wholesalers, retailers, contractors, or operators of hotels, restaurants, or other similar establishments for merchandise for resale or supplies for use in their business operations. [¶] . . . [¶] (2) An individual shall not be included in the term 'employee' under the provisions of this subdivision if such individual has a substantial investment in facilities used in connection with the performance of such services, other than in facilities for transportation, or if the services are in the nature of a single transaction not part of a continuing relationship with the employing unit for whom the services are performed."

6 The salesperson has no substantial investment in facilities used in connection with the performance of the services, other than in facilities for transportation; and

7. The service is performed as a part of a continuing relationship with the principal, not in a single transaction. (See *In re Mission Furniture* (1976) Cal. Unemp. Ins. App. Bd. Precedent Benefit Dec. No. P-T-329 (*Mission Furniture*).)

### A. *Requirement of Full-time Engagement*

■ Metric Man contends there is insufficient evidence to support the court's finding that Folk was required to work for Metric Man on a full-time basis.

Section 621 does not require that the salesperson be contractually obligated to work full-time at soliciting qualifying orders; it requires only that the salesperson *be "engaged* upon a full-time basis" in such solicitation. (§ 621, subd. (c)(1)(B), italics added.) "Engaged" means "involved in activity" or "occupied." (Webster's New Collegiate Dict. (9th ed. 1989) p. 412.) Folk testified he worked an average of 10 hours a day, 5 days a week performing sales work for Metric Man. Folk's testimony constitutes substantial evidence that he was "engaged upon a full-time basis" in the solicitation of orders for Metric Man. The court did not err in finding Folk satisfied section 621's "full-time engagement" requirement.

### B. *Requirement That Services Be Performed Personally*

■ Metric Man contends there is insufficient evidence to support the court's finding that Folk's contract with Metric Man contemplated Folk would personally perform substantially all of the services required under the contract.

■ Because the Unemployment Insurance Code is remedial in nature, its provisions must be liberally construed to further its purpose of reducing the hardship of unemployment. (*Gibson* v. *Unemployment Ins. Appeals Bd.* (1973) 9 Cal.3d 494, 499 [108 Cal.Rptr. 1, 509 P.2d 945]; *Tomlin* v. *Unemployment Ins. Appeals Bd.* (1978) 82 Cal.App.3d 642, 646 [147 Cal.Rptr. 403].) " 'Internal ambiguities and conflicts should be resolved to promote the objective exhibited by the entire plan.' [Citation.]" (*Tomlin, supra,* at p. 646.)

■ The instant case presents an "ambiguity and conflict" as to whether the parties contemplated Folk would personally render services under the

subject contract. The contract provided: "The Distributor [Folk] will use his best efforts to promote demand for and sale of the Company's products and will maintain adequate facilities and sales and personnel for the purpose." Although the requirement that Folk "maintain adequate . . . personnel" suggests that persons other than Folk would be performing services under the contract, it could well have been the parties' mutual understanding that one full-time salesperson was "adequate personnel" for Folk's assigned territory at the time he entered into the contract. Considering the mandate to liberally construe the provisions of the Unemployment Insurance Code and resolve ambiguities and conflicts to promote the legislative objective of reducing the hardship of unemployment, we conclude the court reasonably found the subject contract contemplated Folk would personally perform substantially all of the services required under the contract.

When Metric Man's representative Kevin Lolli was interviewed by the EDD, he stated that Folk satisfied all seven requirements for statutory employee status, including the requirement that services be performed personally. Folk testified it was his understanding when he signed the contract that he was expected to perform the sales work personally and would hire someone else to work for him only if he expanded his territory and his volume of sales increased enough to warrant it. The evidence indicated a single salesperson had previously worked Folk's territory, which further supports the finding the parties contemplated Folk alone would perform his obligations under the contract.[3]

The court specifically found it was not economically feasible for Folk to hire any additional personnel in the performance of the contract.[4] The court cited evidence that despite Folk's full-time efforts, he was able to achieve only $8,000 per month in net sales, on which he was paid a 20 percent commission but no expenses. Further, there was evidence that Metric Man only expected Folk to achieve $10,000 per month in net sales. Had Folk met that expectation, his 20 percent commission minus expenses still would have been insufficient to enable him to hire anyone else to work for him. Viewed in light of these economic realities, the contract provision allowing Folk to

[3]The EDD's representative testified the territory given Folk "was already an established territory which had been covered by a former salesman." Lolli testified that 10 separate distributors over a 20-year period occupied the territory assigned to Folk and that, "The distributor that Mr. Folk replaced[]" performed at the level Folk thought he could attain.

[4]Noting Folk's limited income, the court stated: "[I]t does not appear that Mr. Folk could have hired an assistant, and, therefore, the language of the contract which expressly allowed Mr. Folk to utilize other personnel was illusory when compared to the reality of the situation." It is clear from the context of its ruling that the court was not using the term "illusory" as a legal term of art referring to a contract lacking mutuality of consideration, as Metric Man suggests, but rather in the more fundamental sense of "based on . . . illusion." (Webster's New Collegiate Dict., *supra*, at p. 600.)

hire additional personnel reflected a quixotic ideal rather than a realistic expectation of the parties. The court's reference to the provision as "illusory" was accurate.

Finally, we note Metric Man hired Folk after he responded to its help-wanted advertisement in the newspaper, representing himself not as an independent contractor but as an applicant for a job. Folk testified he was required to sign the subject contract to get the job. Nothing in the record indicates Folk had any real bargaining power or choice as to the terms of the contract. ■ As noted, the provisions of the Unemployment Insurance Code must be liberally construed and ambiguities regarding a claimant's entitlement to unemployment benefits should be resolved to further the code's objective of reducing the hardship of unemployment. Accordingly, a traveling salesperson's right to unemployment benefits should not be defeated by boilerplate contractual terms technically rendering the salesperson an independent contractor under section 621 when such terms are dictated by the employer and accepted by the salesperson without any meaningful choice. (Cf. *S.G. Borello & Sons, Inc.* v. *Department of Industrial Relations* (1989) 48 Cal.3d 341, 358-360 [256 Cal.Rptr. 543, 769 P.2d 399] [evidence that agricultural workers signed preprinted contracts providing they were not employees was insufficient to show they were independent contractors rather than employees under the Workers' Compensation Act because there was no indication they had any real choice of terms].)

■ We conclude there is sufficient evidence supporting the court's finding that the parties' contract contemplated Folk would personally perform substantially all of the services.

### C. *Requirement of Sales to Wholesalers and Retailers*

■ Metric Man next contends there is insufficient evidence to support the court's finding that the orders Folk solicited were predominantly from wholesalers and retailers.

Metric Man relies heavily on *Mission Furniture, supra,* Cal. Unemp. Ins. App. Bd. Precedent Benefit Dec. No. P-T-329. Because the language of section 621 was taken verbatim from a federal statute in the Internal Revenue Code, the UIAB in *Mission Furniture* quoted two Internal Revenue Service rulings interpreting the language through various hypothetical examples of persons qualifying and not qualifying as employees under the federal statute. In one of the hypothetical examples unrelated to the facts of *Mission Furniture,* the salesperson sold automotive parts and rubber seal compound to automobile dealers, gasoline service stations, and automotive

repair shops. The author stated that " 'generally the operator of a repair shop or garage who has no [retail unit separate from the operator's regular business] is not a "retailer" or other customer of the type specified in [the statute].' " (*Mission Furniture, supra,* Cal. Unemp. Ins. App. Bd. Precedent Benefit Dec. No. P-T-329 at p. 14.) However, the author concluded the salesperson qualified as a statutory employee because he spent 80 percent of his working time soliciting orders from the requisite types of customers. (*Ibid.*) Metric Man urges us to follow the reasoning of this hypothetical example and conclude Folk was not a statutory employee because most of his customers were repair shops.

We are not bound by tax precedent opinions of the UIAB, much less regulatory opinions of the Internal Revenue Service, as "the doctrine of stare decisis applies only to decisions of appellate courts . . . ." (*Fenske* v. *Board of Administration* (1980) 103 Cal.App.3d 590, 596 [163 Cal.Rptr. 182].) We disagree with *Mission Furniture* to the extent it suggests that generally an automotive repair facility with no separate retail unit is not a "retailer" within the meaning of section 621.

"Issues of statutory construction present questions of law, calling for independent review by an appellate court. [Citations.]" (*Botello* v. *Shell Oil Co.* (1991) 229 Cal.App.3d 1130, 1134 [280 Cal.Rptr. 535].) The term "retailer" is not defined in the Unemployment Insurance Code. However, we can look to the definition and use of that term in other statutes as a guide to its intended meaning in section 621. (*Quarterman* v. *Kefauver* (1997) 55 Cal.App.4th 1366, 1371 [64 Cal.Rptr.2d 741]; *Frediani* v. *Ota* (1963) 215 Cal.App.2d 127, 133 [29 Cal.Rptr. 912].) Additionally, "[a] dictionary is a proper source to determine the usual and ordinary meaning of a word or phrase in a statute. [Citation.]" (*E.W. Bliss Co.* v. *Superior Court* (1989) 210 Cal.App.3d 1254, 1258, fn. 2 [258 Cal.Rptr. 783].)

The definition of "retailer" in Revenue and Taxation Code section 6015 includes "[e]very seller who makes any retail sale or sales of tangible personal property . . . ." (Rev. & Tax. Code, § 6015, subd. (a)(1).) Revenue and Taxation Code section 6007 defines "retail sale" as "a sale for any purpose other than resale in the regular course of business in the form of tangible property." The dictionary definition of "retail" is to sell "in small quantities directly to the ultimate consumer." (Webster's New Collegiate Dict., *supra,* at p. 1006.)

Under these definitions, the operator of an automotive repair shop is clearly a retailer because the operator sells replacement parts, which are tangible property, in the regular course of business to ultimate consumers for

purposes other than resale to a third party. Indeed, Business and Professions Code section 9884.8 requires an automotive repair dealer to list parts separately from service work on the customer's invoice and to separately list and total the prices and sales tax charged for the parts.[5]

The policy underlying the Unemployment Insurance Act (Act) is to promote public and private enterprise by establishing "a system of unemployment insurance providing benefits for persons unemployed through no fault of their own, and to reduce involuntary unemployment and the suffering caused thereby to a minimum." (§ 100.) Section 621 furthers this legislative objective by extending the benefits of the Act to traveling salespersons and certain other independent contractors who do not qualify as employees under common law.

The policy underlying the Act, and specifically section 621, would be ill served if salespersons dealing in resalable goods were denied the protection of the Act merely because most of their customers resell the goods incident to repair work only. For purposes of determining eligibility for unemployment benefits under section 621, there is no rational basis for distinguishing between such salespersons and those who sell predominantly to customers who put the goods on a shelf for resale. Accordingly, we hold that any automotive repair dealer that charges customers for parts in the regular course of business is a retailer within the meaning of section 621.

In the instant case, Folk testified that about 20 percent of his customers were auto parts stores, about 5 percent were manufacturers that used the products he sold to them as component parts in some other product they were manufacturing, and the rest were automotive repair facilities. Thus, about 95 percent of Folk's customers were retailers under section 621. Folk's testimony sufficiently supports the court's finding that the orders he solicited were predominantly from "wholesalers or retailers" as required by section 621.

### III. Court's Exercise of Independent Judgment

Metric Man contends there is "ample evidence in the record" to suggest the court failed to exercise its independent judgment over the administrative record. In support of this contention, Metric Man points to the absence of any reference to *Mission Furniture* in the judgment and argues the court

---

[5]Folk noted in his testimony before the administrative law judge that the parts he sold to automotive repair facilities had to be itemized on repair orders and thus were effectively resold to the customers. He added: "Metric Man only sells to the wholesale trade. In other words, they have to have [a] resale number."

failed to consider the effect of the testimony and exhibits presented at the hearing before the administrative law judge.

Metric Man's contention is spurious. The fact the court did not find in Metric Man's favor does not suggest it failed to exercise its independent judgment over the evidence. The judgment expressly states: "The function of this Court is to exercise independent judgment on the evidence, and to determine whether the administrative agency's findings are supported by the evidence." There is no reason to conclude the court did otherwise.

DISPOSITION

The judgment is affirmed.

Kremer, P. J., and Huffman, J., concurred.