# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

July 15, 1998

Cecil W. Crowson
Appellate Court Clerk

DONNA WILLIS and the )
FRANKLIN COUNTY )
EDUCATION ASSOCIATION, )
)
    Plaintiffs/Appellants, )   Franklin Chancery
)   No. 13,920
VS. )
)   Appeal No.
FRANKLIN COUNTY BOARD )   01A01-9606-CH-00266
OF EDUCATION and )
PATTY PRIEST, Superintendent )
of Franklin County Schools, )
)
    Defendants/Appellees. )

## APPEAL FROM THE FRANKLIN COUNTY CHANCERY COURT
## AT WINCHESTER, TENNESSEE

### THE HONORABLE JOHN W. ROLLINS, JUDGE

For Plaintiffs/Appellants:

Charles Hampton White
Richard L. Colbert
Cornelius & Collins
Nashville, Tennessee

For Defendants/Appellees:

Robert G. Wheeler, Jr.
Charles W. Cagle
Lewis, King, Krieg, Waldrop & Catron
Nashville, Tennessee

## AFFIRMED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal involves a public school employee's employment rights under a contract between the Franklin County Board of Education and the Franklin County Education Association. After accepting a lower paying teaching position when her central office job was abolished, the employee and her union filed suit in the Chancery Court for Franklin County alleging that the school superintendent and the school board had breached the contract. The trial court, sitting without a jury, held that the school superintendent and the school board had not breached the contract and had not acted arbitrarily or improperly by offering the employee a teaching position. We affirm the trial court's judgment because we have determined that the reemployment rights available to laid off employees do not apply to employees whose positions have been abolished, and that the evidence does not show that the school superintendent or the school board acted improperly.

## I.

Donna Willis has been employed by the Franklin County Board of Education for over twenty years. She first taught high school business courses for three years. By 1992, she had served as Elementary Supervisor of Instruction for over twenty years and Chapter I Director for eleven years. She had also worked as Federal Programs Director and Child Nutrition Supervisor. She was the senior employee in the central office and had attained the highest available career level certification for supervisors.[1] Ms. Willis never received a complaint about her work during her tenure as a teacher or administrator.

In May 1992, Patty Priest, the Superintendent of Schools for Franklin County, decided to reorganize the central office in response to the recently enacted Education Improvement Act[2] and because she believed that the existing organization was disjointed and illogical. Her reorganization plan called for the abolition of four

---

[1]Ms. Willis had been designated as a career level III supervisor under the career ladder program whose purpose is to reward outstanding teachers, principals, and supervisors with pay supplements and additional responsibilities. *See* Tenn. Code Ann. § 49-5-5002 (b)(1) (1996).

[2]*See* Act of Mar. 2, 1992, ch. 535, § 4, 1992 Tenn. Pub. Acts 19, 23 (codified at Tenn. Code Ann. §§ 49-1-601, -608 & 610 (1996)).

central office supervisory positions,[3] including Ms. Willis's position, and the creation of four new positions.[4] The new positions combined some of the functions and responsibilities of the old positions with some new responsibilities. On May 13, 1992, Ms. Priest informed Ms. Willis and the other incumbents in the positions to be abolished of her plans, and on May 14, 1992, the Franklin County Board of Education accepted Ms. Priest's reorganization plan.

Ms. Willis applied for all of the newly created positions but was the only employee of the four employees whose positions had been abolished who was not offered one of the new positions. Ms. Priest hired the new Director of Accountability herself and then appointed a nine-person committee[5] to interview the applicants for the remaining three positions. The committee interviewed Ms. Willis and the other applicants for each central office job using the same questions and objective rating scale. Ms. Willis's scores placed her at the bottom of the list of applicants for each position. The committee recommended the person with the highest score for each of the three remaining newly created positions. Ms. Priest concurred with these recommendations, which were approved by the Franklin County Board of Education.

After Ms. Willis was not offered one of the newly created central office positions, Ms. Priest offered her two different teaching positions. Ms. Willis accepted one of the positions even though its salary was approximately $7,000 per year less than her previous salary. Ms. Willis also requested a hearing before the Franklin County Board of Education. Following a hearing, the school board approved Ms. Willis's transfer to Oak Grove Elementary School.

On December 7, 1992, Ms. Willis and the Franklin County Education Association filed a grievance because she was not offered one of the newly created central office positions. Following an arbitration hearing in April and May 1993, the

---

[3]The positions to be abolished included the Adult Basic Education Level I Coordinator – part time, the Elementary Supervisor of Instruction, the Secondary Supervisor of Instruction, and the Teacher/Center Director.

[4]The four new positions to be created included the Director of Accountability, At-Risk Intervention Coordinator, Curriculum and Instruction Supervisor, and Full-Time Adult Basic Education Supervisor.

[5]The committee consisted of the newly hired Director of Accountability, a parent, the Franklin High School student body president, a guidance counselor, three teachers, and two principals.

arbitrator sustained the grievance and found that "proper procedures were not followed and there was a violation of Due Process, Fair Treatment and Proper Cause by the Board." The arbitrator recommended that Ms. Willis be named Director of Accountability and that she receive $8,062 in back pay. The Franklin County Board of Education rejected the arbitrator's recommendations.

On October 18, 1993, Ms. Willis and the Franklin County Education Association filed suit in the Chancery Court for Franklin County against Ms. Priest and the Franklin County Board of Education. The complaint alleged several violations of the contract between the Franklin County Board of Education and the Franklin County Education Association, including (1) reducing Ms. Willis's rank and compensation and depriving her of a professional advantage without just cause, (2) failing to notify either the association or Ms. Willis of the newly created positions within the contract's specified time period, and (3) denying Ms. Willis her seniority right of recall and placement.

The trial court conducted a bench trial and determined that the arbitrator's findings were not binding and that neither the school board nor the school superintendent had breached the contract. The trial court also held that the "due process" provisions in the contract did not apply to Ms. Willis because her position had been abolished and, similarly, that the layoff provision in the contract did not apply to Ms. Willis because she had not been laid off. As a final matter, the trial court also held that there was no proof that either Ms. Priest or the Franklin County Board of Education had acted arbitrarily, capriciously, or unreasonably in abolishing the old positions.

## II.
### CLAIMS BASED ON THE CONTRACT

Ms. Willis and the Franklin County Education Association take issue with the trial court's interpretation of the contract. They insist that the contract's "due process" provisions apply to Ms. Willis because she was reduced in rank and compensation. They also insist that the trial court erred by holding that Ms. Willis's seniority "reemployment" rights had not been violated when she was not notified of

the newly created positions and was not placed in one of the new positions based on her seniority.

## A.

It is elementary that whatever contract rights Ms. Willis has can only arise from the memorandum of agreement between the Franklin County Board of Education and the Franklin County Education Association. *See Hillsboro Plaza Enters. v. Moon*, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993) (holding that the rights and obligations of contracting parties are governed by the terms of their written agreement). Our responsibility, when called upon to construe a contract, is to ascertain and to give the fullest possible effect to the intentions of the contracting parties. *See Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975); *Breeding v. Shackelford*, 888 S.W.2d 770, 775 (Tenn. Ct. App. 1994).

Because the parties' intentions must be reflected in the text of their written contract, we construe written contracts as a whole, *see Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985), and we consider each provision in the context of the entire agreement. *See Wilson v. Moore*, 929 S.W.2d 367, 373 (Tenn. Ct. App. 1996). We also give the contract's language its plain, natural, and ordinary meaning, *see Hardeman County Bank v. Stallings*, 917 S.W.2d 695, 699 (Tenn. Ct. App. 1995), and we avoid strained interpretations that create ambiguities where none exist. *See Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975).

## B.
### THE LAYOFF CLAIMS

Ms. Willis insists that Ms. Priest and the Franklin County Board of Education did not abide by the terms of the contract governing laid off employees. Specifically, she asserts that Ms. Priest did not provide her with fifteen days notice of the proposed layoff as required by Article XII(B)[6] of the contract and that she was not given recall

---

[6] Article XII(B) of the contract requires that "[t]he Administration shall provide written notice to the Association and to each teacher who may possibly be affected by the layoff no later than 15 working days preceding the proposed layoff or as soon as possible. Such notice shall include specific written reasons for the proposed layoff."

rights to the newly created central office positions as required by Article XII(C)[7] of the contract. In order to be entitled to these rights, Ms. Willis must first demonstrate that she is a laid off employee under the facts of this case.

The contract does not define the terms "layoff" or "laid off teacher;" however, the meaning of the term "layoff" is the same both in everyday usage and in the labor-management context. In its common sense, a "layoff" is a period during which a worker is temporarily dismissed or allowed to leave work. *See* 8 The Oxford English Dictionary 736 (2d ed. 1989). In the labor-management context, it connotes a period of temporary dismissal with the anticipation of recall. *See Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 278, 287 n.11, 66 S. Ct. 1105, 1112 n.11 (1946); *CBS, Inc. v. International Photographers of Motion Picture Indus., Local 644*, 603 F.2d 1061, 1063 (2d Cir. 1979); *Mayo v. City of Sarasota*, 503 So. 2d 347, 349 (Fla. Dist. Ct. App. 1987); *Formisano v. Blue Cross of Rhode Island*, 478 A.2d 167, 169 (R.I. 1984). The term is not ambiguous, *see Anderson v. Twin City Rapid Transit Co.*, 84 N.W.2d 593, 597-98 (Minn. 1957), and is clearly distinguishable from a job abolishment which is a permanent elimination of a particular position. *See Smith v. California Unemployment Ins. App. Bd.*, 125 Cal. Rptr. 35, 40 (Ct. App. 1975) (construing the state Civil Service Act); *General Motors Corp. v. Erves*, 236 N.W.2d 432, 437 (Mich. 1975); *In re Moreo*, 468 N.E.2d 85, 88 (Ohio Ct. App. 1983).

Under the facts of this case, Ms. Willis was never laid off. Her central office position was permanently abolished. She was never told that she could expect to be recalled to her former position. She worked continuously until June 30, 1992, and by that time she had already accepted a teaching position for the next school year. She never missed a paycheck. Because Ms Willis's central office position was permanently abolished, she was not entitled to the rights accorded to laid off employees in Article XII of the contract.

---

[7]Article XII(C) provides:

1.  As vacancies arise a laid-off teacher will be recalled to the first available vacancy for which the teacher is certified with the senior teacher being recalled for such vacancy first.
2.  No new or substitute appointments may be made while there are laid off tenured teachers available who are qualified to fill the vacancies.
3.  Any teacher re-employed by exercising his/her recall rights shall be given full salary and related benefits.

## C.

### THE JUST CAUSE CLAIM

Ms. Willis also asserts that she could not be removed from her central office position without just cause. She bases her argument on Article XXII(C)(1) of the contract which provides:

> No professional employee shall be discharged, transferred, non-renewed, suspended, disciplined, reprimanded, adversely evaluated, reduced in rank or compensation or deprived of any professional advantage without just cause.

By its own terms, this provision applies to disciplinary actions in which an employee is discharged, transferred, non-renewed, suspended, disciplined, reprimanded, adversely evaluated, reduced in rank or compensation, or deprived of any professional advantage.

Ms. Willis was not disciplined. Her central office position was permanently abolished not because of her performance but because of the superintendent's and the school board's desire to be more efficient and to be better able to meet the performance standards contained in the Education Improvement Act. She was not reduced in rank or compensation for disciplinary reasons. These reductions came about because her former central office position was permanently abolished and because the only other available positions were teaching positions that paid less.

## III.

### CLAIMS BASED ON STATUTORY REEMPLOYMENT RIGHTS

We determined in the previous section that neither Ms. Priest nor the Franklin County Board of Education ignored Ms. Willis's contract rights because the contract did not address the rights of employees who are dismissed because of the elimination of their positions. One reason for the contract's silence on this subject may very well be that it has been addressed by statute. Tenn. Code Ann. § 49-5-511(b)(3) (1996) requires that tenured teachers[8] who are dismissed because of the elimination of their position be put on a "preferred list for reemployment" and that they be placed "in the

---

[8]A supervisor is a "teacher" for the purpose of this section. *See* Tenn. Code Ann. § 49-5-501(10) (1996).

first vacancy the teacher is qualified by training and experience to fill." Ms. Willis insists that the school superintendent and school board ignored her reemployment rights under this statute.

Ms. Willis overstates her rights under Tenn. Code Ann. § 49-5-511(b)(3). This section does not prevent the superintendent or the school board from determining a laid off teacher's competency, compatibility, and suitability for a particular position. *See Randall v. Hankins*, 733 S.W.2d 871, 874 (Tenn. 1987). The statute does not require automatic reinstatement but rather preferential consideration once a teacher shows the requisite qualifications for the vacant position. *See Randall v. Hankins*, 733 S.W.2d at 875; *Long v. Carey*, Gibson Eq. No. 3, 1990 WL 125541, at *3-4 (Tenn. Ct. App. Aug. 31, 1990); *pet. rehearing denied*, 1990 WL 151207 (Tenn. Ct. App. Oct. 11, 1990), *perm. app. denied* (Tenn. Dec. 3, 1990).

The record contains substantial evidence that Ms. Willis was considered for all the available positions she was qualified to hold. She applied for the four new central office positions and was interviewed by a diverse committee for three of the positions. She was not offered the Director of Accountability position because she lacked experience as a principal and because Ms. Priest believed that she did not exhibit the initiative required for the position. She was not offered any of the remaining three central office positions because the screening committee rated her qualifications lower than any of the other applicants. After Ms. Willis was not offered one of the new central office positions, Ms. Priest notified her of two available teaching positions for which she was qualified, and Ms. Willis accepted one of these positions.

Teachers are entitled to be protected from arbitrary or capricious actions and transfers "actuated by political or other improper motives." *McKenna v. Sumner County Bd. of Educ.*, 574 S.W.2d 527, 534 (Tenn. 1978); *Springer v. Williamson County Bd. of Educ.*, 906 S.W.2d 924, 926 (Tenn. Ct. App. 1995). Even so, personnel actions based on valid programmatic considerations are not invalid simply because part of the motivation may have been political. *See Springer v. Williamson County Bd. of Educ.*, 906 S.W.2d at 926. Although Ms. Willis contends that the abolition of her position was politically motivated, there are sufficient, demonstrable

grounds supporting Ms. Priest's and the board's decisions to abolish her position and to place her in a teaching position.

Ms. Willis worked for Ms. Priest for five years prior to the reorganization. There was no evidence that during this time there were any problems or complaints about their working relationship or that Ms. Priest wanted to fire her. Ms. Willis was given a fair opportunity for every one of the new positions. The testimony established that, in response to legislative mandates requiring accountability, the Board and Ms. Priest chose to overhaul the central office. Their actions can in no way be characterized as arbitrary or capricious.

## IV.

We affirm the judgment and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal, jointly and severally, to Donna Willis and the Franklin County Education Association for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
SAMUEL L. LEWIS, JUDGE