Filed 12/13/13  Sears v. Cal. Unemployment Ins. Appeals Bd. CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THOMAS M. SEARS,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD,<br><br>  Defendant and Respondent;<br><br>MONTEREY COUNTY HOUSING AUTHORITY DEVELOPMENT CORPORATION,<br><br>  Real Party in Interest and Respondent. | H038429<br>(Monterey County<br> Super. Ct. No. M113749) |

Appellant Thomas Sears challenges an order denying his petition for a writ of mandamus, in which he sought to overturn the denial of unemployment insurance benefits under Unemployment Insurance Code section 1256 (hereafter, "section 1256"). Representing himself on appeal, he contends that he should have received such benefits because there was no evidence of misconduct during his employment with the Monterey County Housing Authority Development Corporation.  We will affirm the judgment.

*Background*

In summarizing the factual and procedural history of this dispute, we note that appellant has disregarded the rules governing appellate briefs by failing to support numerous factual assertions with citations to the record. California Rules of Court, rule 8.204(a)(1)(C), requires each appellate brief to "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." A brief that does not comply with this rule may be struck and returned for correction. (Cal. Rules of Court, rule 8.204(e).) Appellant's brief is seriously deficient in this regard; his "Statement of Facts and Procedural History" lacks any references to the record, as does much of his "Legal Argument" section in which facts are stated. "Because '[t]here is no duty on this court to search the record for evidence' [citation], [we] *may* disregard any factual contention not supported by a proper citation to the record." (*Grant-Burton v. Covenant Care, Inc.* (2002) 99 Cal.App.4th 1361, 1379; see also *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239 [appellate court need not consider any matter asserted without appropriate reference to the record].) We will therefore disregard appellant's entire statement of the factual and procedural history as well as every factual assertion in his "Legal Argument" section that does not refer to evidence in the appellate record. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 [argument unsupported by citations to the record will be deemed waived]; *Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545 ["We are not required to search the record to ascertain whether it contains support for [plaintiff's] contentions"].)

Appellant began employment with the Monterey County Housing Authority (hereafter, "Housing Authority") in October 2006, as a senior construction manager. At that time he signed a statement acknowledging his understanding of the Housing Authority's conflict-of-interest policy and attesting to his awareness that the Housing Authority's equipment and other property were not to be used for personal business or outside work activities. He also acknowledged receipt of the seven-page Information

Security Policy, which delineated employee responsibilities for use of the Internet, prohibited the use of agency resources for personal business, required adherence to Housing Authority policies regarding confidentiality, and cautioned employees to avoid transmission of nonpublic information. Appellant signed another acknowledgment of the conflict-of-interest policy on February 23, 2010.

In June 2010 appellant was informed that the Development Department of the Housing Authority was making a transition to a "fully functional non-profit organization," the Monterey County Authority Development Corporation (HDC). His own position would transfer, effective June 28, "as status-quo," with the same work duties, salary, seniority status, and accruals of vacation and sick leave. In notifying appellant of the transition, the Executive Director said, "I look forward to our continued professional relationship."

On July 19, 2010, HDC's president and CEO, Starla Warren, proposed that appellant be terminated for deficient performance, and he was placed on administrative leave. On August 20, 2010, the chairman of the HDC Board of Directors rescinded the proposed termination, and appellant was permitted to resume his duties. He returned to work on August 25, 2010.

Two days later he received a formal reprimand from Warren referencing the performance failings for which he had been placed on administrative leave. Then, on September 16, 2010, Warren issued appellant two additional formal reprimands. In the first, she informed appellant that a Human Resources firm had been retained to investigate complaints he had made about his work environment. During the investigation, co-workers had reported conduct of a sexually harassing nature toward them and toward at least one vendor of the agency. This conduct, Warren noted, directly violated the HDC's sexual harassment policy.

In the second letter that day, Warren informed appellant that during his administrative leave, "several serious issues of policy violations" had been discovered in

3

the form of e-mails and documents stored on appellant's external hard drive pertaining to private financial dealings and other personal business. By conducting such activity, Warren stated, appellant not only had violated the conflict-of-interest policy and the information security policy, but had put the agency at "serious risk as the business being conducted by you under your corporate veil, is questionable in nature." These "extensive violations of policy," together with the inappropriate conduct and performance issues, led Warren to place appellant on another administrative leave. On October 4, 2010, his employment was terminated.

Appellant applied for unemployment benefits, and initially they were granted. HDC, however, citing section 1256, appealed that action on the ground that appellant's misconduct made him ineligible for benefits.[1] After two administrative hearings, the administrative law judge (ALJ) determined that appellant had been terminated for "misconduct connected with his most recent work" and therefore was disqualified for unemployment benefits. His decision was based on the findings that (1) appellant had failed to comply with the conflict-of-interest policy by being actively engaged in outside professional work without the knowledge or authorization of the employer; (2) he had used HDC's computer equipment to conduct those outside business activities for profit and to store non-work-related business information; and (3) he had disclosed confidential and proprietary information of the employer—namely, personal cell phone numbers and e-mail addresses of the members of the board of directors.[2] The ALJ determined that by

---

[1] Section 1256 provides, in pertinent part, "An individual is disqualified for unemployment compensation benefits if the director finds that he or she left his or her most recent work voluntarily without good cause or that he or she has been discharged for misconduct connected with his or her most recent work."

[2] The disclosure of board members' personal information was covered during Starla Warren's testimony at the hearing before the ALJ. Warren testified that during appellant's second administrative leave, Charles Miller, a man representing himself as

4

engaging in unauthorized business activity for profit, appellant had "substantially breached an important duty or obligation owed to the employer," which was "wilful or wanton in character and detrimental to the employer's interest." Appellant had also breached his obligation of "fair dealings with his employer" by disclosing the confidential information of the board members. The ALJ did not, however, sustain the allegations of sexual harassment.

Appellant filed an untimely appeal to the Unemployment Insurance Appeals Board, which implicitly overlooked the defect and affirmed the ALJ's decision. The Appeals Board stated, "We have carefully and independently reviewed the record in this case, and have considered the contentions raised on appeal. We find no material errors in the issue statement or in the findings of fact. The reasons for decision properly apply the law to the facts." After rejecting appellant's argument that the weight of the evidence did not support the ALJ's factual findings, the Appeals Board expressly adopted the entire findings, reasoning, and conclusion of the ALJ.

Appellant challenged the Appeals Board's decision in his mandamus petition, which he filed in propria persona on August 22, 2011. In the petition he alleged that he had been unfairly and unjustifiably punished for exercising his free speech rights and for "reporting waste, fraud and abuse of public funds" as a whistleblower. Subsequently he obtained an attorney and challenged all of the ALJ's factual findings. Emphasizing the shift in employment from the Housing Authority to HDC, appellant specifically argued that there was no evidence that the Housing Authority's conflict-of-interest policy continued to be applicable to his "new job" at HDC, or that he had been informed of any such HDC policy. Even if there was such a policy, he insisted, all of the violations found by the ALJ occurred before the transfer and therefore could not be attributed to his "most

appellant's business consultant, had communicated with board members on appellant's behalf, using the members' personal e-mail addresses.

5

recent work," within the meaning of section 1256. The documents found on his computer, for example, were all dated during his employment by the Housing Authority. "In short, the ALJ had no factual basis for using the 2006 County Conflict of Interest rules as applicable to Sears, he made no finding [that] Sears was aware of any applicable Conflict of Interest rules, and he conflated events from the prior employer with Sears' most recent work. All these errors compounded to cause the erroneous conclusion by this ALJ." Appellant used the same reasoning to challenge the findings that he had conducted outside business activities, used work computer equipment for that purpose, stored personal documents on his employer's external hard drive, and provided confidential information -- e-mail addresses and telephone numbers of board members -- to Charles Miller.[3] Even if those activities occurred, he argued, there was no evidence that they took place while he was an *HDC* employee.

The superior court heard argument on the petition on March 12, 2012. At the conclusion of the hearing, the court found that despite the employment transfer from the Housing Authority to HDC, appellant was "essentially" continuing to work for the Housing Authority through "a partner organization." He was not "terminated in the usual sense" from the Housing Authority; he did not have to apply and interview for a new position with HDC, and he retained all of his salary, benefits, and seniority status. Thus, the court found, appellant could not avoid the finding of misconduct by arguing that the charged acts were not connected with his "most recent work." (§ 1256.)

Having independently reviewed the administrative record, the court then found that appellant had failed to meet his burden to show that the conclusion of the Appeals Board was not supported by the evidence. More specifically, the court found that "there was a willful and wanton substantial breach of Mr. Sears' duty to the employer because

---

[3] See footnote 2.

6

Mr. Sears disregarded the employer's interests and injured the employer by deliberately violating the conflict-of-interest policy . . . and . . . disclosing the confidential information without authorization . . . ." The court also determined, based on the reports from the independent investigation, that appellant had violated the employer's sexual harassment policy. From the ensuing April 11, 2012 judgment denying appellant's petition, appellant filed a timely notice of appeal[4] and has appeared in this court in propria persona.

*Discussion*

*1. Exhaustion of Administrative Remedies*

We first address a procedural point raised in defendants' responsive brief. Defendants urge this court to dismiss this appeal for lack of jurisdiction because appellant failed to exhaust his administrative remedies, having filed his appeal to the Appeals Board beyond the 20 days prescribed by Unemployment Insurance Code section 1334. Defendants raised this issue before the superior court, which rejected their position. The court reasoned that the Appeals Board, in allowing appellant's untimely appeal to proceed, must have determined that good cause existed on one of the grounds listed in the statute—namely, mistake, inadvertence, surprise, or excusable neglect. We find the court's reasoning to be sound and likewise proceed to the merits of appellant's challenge to the Appeals Board's decision.

*2. Sufficiency of the Evidence of Misconduct*

Appellant repeats almost verbatim the brief written by his counsel in preparation for the hearing on his writ petition in superior court, including the "Legal Standards

---

[4] Appellant's notice of appeal, filed by the attorney who represented him at the hearing, mistakenly designated his appeal as one from an order after judgment. The error is inconsequential, however, as the order denying appellant's petition is appealable as a "final determination of the rights of the parties in an action or proceeding." (Code Civ. Proc., § 577; see *Griset v. Fair Political Practices Com'n* (2001) 25 Cal.4th 688, 699 [denial of mandamus petition appealable, as it disposed of all issues in the action].)

Applicable to this Writ Procedure" and all of the arguments challenging the conclusions of the ALJ. However, appellant misunderstands this court's duty in reviewing the lower court's ruling. At this stage of the proceedings we do not engage in a de novo reweighing of the evidence produced at the hearing before the ALJ. "The function of the superior court in reviewing decisions granting or denying unemployment insurance benefits is to exercise its independent judgment on the evidence and inquire whether the administrative agency's findings are supported by the weight of the evidence. [Citation.] 'While the superior court exercises its independent judgment on the administrative evidence, California law accords the appellate court a much narrower scope of review, confining it to an inquiry whether the superior court's findings are supported by substantial evidence. [Citation.] The appellate court's review of the superior court judge's gleanings from the administrative transcript is just as circumscribed as its review of a jury verdict or judge-made finding after a conventional trial. On appeal, after the superior court has applied its independent judgment to the evidence, all conflicts must be resolved in favor of the respondent and all legitimate and reasonable inferences made to uphold the superior court's findings; moreover, when two or more inferences can be reasonably deduced from the facts, the appellate court may not substitute its deductions for those of the superior court.' " (*Santa Cruz Transportation, Inc. v. Unemployment Ins. Appeals Bd.* (1991) 235 Cal.App.3d 1363, 1366-1367; *Metric Man, Inc. v. Unemployment Ins. Appeals Bd.* (1997) 59 Cal.App.4th 1041, 1045-1046.) We discuss the superior court's findings in light of these limitations on our appellate review.

Appellant raises several challenges to the sufficiency of the evidence that (1) he conducted business on his employer's computer equipment; (2) he conducted outside business for profit and used the external hard drive his employer issued to him to store documents related to that business; and (3) he conveyed confidential information -- e-mail addresses and phone numbers of HDC board members -- to Charles Miller. Common to these contentions is the assertion that HDC never told him that there was a

policy against any of these acts.  Under section 1256, he points out, the disqualifying misconduct must be connected with his "most recent work."  With this reasoning he concludes that even if misconduct occurred *before* the transfer to HDC, he could not be found to have committed misconduct as an HDC employee, particularly in the absence of an HDC policy prohibiting the charged acts.

Addressing the charge that he conducted outside business while an HDC employee, appellant contends that the ALJ erroneously concluded that he had violated a company policy prohibiting conflicts of interest.  He acknowledges that he signed such a policy when his employer was the Housing Authority, but "[no] evidence was even offered to show [that] [HDC] notified Sears [that] the same policy applied to his new job."  As the superior court recognized, however, this was *not* a "new job"; it was the same job, which retained his seniority status, salary, vacation and sick leave, and other benefits.  The transfer was automatic, without any termination from the first employer or required application to the second.  Only the name of the employer changed.  As the superior court suggested, appellant's argument exalts "form over substance," since "he was essentially working for the Housing Authority and in a partner organization." Moreover, the ALJ found that HDC had affirmatively adopted the Housing Authority policies after the transfer, and that appellant was aware of them.  Finally, the voluminous documents evidencing a conflict of interest were at least *maintained* while appellant was an HDC employee.  There was no error in the trial court's inference that the conflict policy applied to appellant's employment after the transfer, or the finding that his conduct in violation of that policy was related to his post-transfer work.

To the charge that he conducted outside business activities using his employer's computer equipment, appellant argues only that no one ever notified him that this was against HDC's policy—if there was such a policy—and that there was no evidence of such misuse after August 27, 2010.  Appellant concedes that he received a computer use policy on August 27, 2010.  He insists, however, that his testimony established that he

used the employer's computer equipment only during his own personal time before work, which was consistent with the policy. There was no evidence, he argues, that he "installed," "utilized," or "stored" private information on the hard drive after August 27, 2010. Evidently the trial court did not believe that "someone" added or deleted files from that hard drive before the hearing, as appellant implies. In its independent review of the evidence the court was entitled to infer from Warren's testimony that the documents found on appellant's hard drive were placed there by him.

Appellant further challenges the finding that his disclosure of confidential information to Charles Miller was "connected with his or her most recent work," again because there was no evidence that it occurred during his employment at HDC, following the August 27, 2010 transfer. Appellant's disclosure of the cell phone numbers and e-mail addresses of board members clearly was connected with his work at HDC, as it occurred while he was an HDC employee, during his second administrative leave. As to this finding, appellant unsuccessfully tries to justify his conduct by insisting that he "was never told the information was confidential," and he believed that the information was in the public domain. After all, he argues, it would have been easy for anyone to find the e-mail addresses and phone numbers on the Internet. Appellant cannot obtain reversal, however, by simply reminding us of his own testimony and repeating the excuses he offered for violating his employer's policies.

He next tries another strategy to avoid the consequences of his actions: The release of the contact information did not constitute willful misconduct as defined in section 1256. The essence of his argument, however, is (again) that when he disclosed the information he was not a county employee, and there was no evidence that HDC adopted the county's policies and notified appellant of them. Since, in appellant's view, this means that he had no duty to HDC to keep county information confidential, he could not have engaged in misconduct within the meaning of section 1256. However, reiterating the distinction between the Housing Authority and HDC does not help him.

10

Likewise, the blanket statement, with no supporting argument or authority, that "his individual release of that information was reasonable" and thus not "willful or wanton," does not contribute to any meaningful analysis.

It has not escaped our attention that appellant has omitted any argument regarding the sexual harassment charges. There is substantial evidence, based on the testimony and documentary evidence presented at the administrative hearing, that he engaged in misconduct of this nature while appellant was an HDC employee. On appeal he does not contend otherwise. Thus, even if there were insufficient evidence to support the court's findings regarding appellant's conflicts of interest, unauthorized computer use, and disclosure of confidential information, on this alternative ground alone we must uphold the superior court's conclusion that he was ineligible for unemployment benefits based on misconduct.

*Disposition*

The judgment denying the petition for writ of mandamus is affirmed.

11

_____

ELIA, J.

WE CONCUR:


_____

RUSHING, P. J.


_____

PREMO, J.